IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DANIEL C. CALLAHAN, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CV 118-108 |
| | ) |
| OFFICER YOLANDA MARTIN; | ) |
| WARDEN PHILBIN; FNU SHELTON, | ) |
| Deputy Warden of Care and Treatment; | ) |
| FNU MCDOWELL, Unit Manager; | ) |
| SHIFT SUPERVISOR; FNU TAYLOR, | ) |
| Doctor; and JOHN/JANE DOE, | ) |
| Safety Inspector, | ) |
| | ) |
| Defendants. | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1]  He is proceeding *pro se* and *in forma pauperis* ("IFP").  Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants.  Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

### I.     SCREENING OF THE AMENDED COMPLAINT

####    A.     BACKGROUND

Plaintiff names as Defendants:  (1) Officer Yolanda Martin; (2) Warden Philbin; (3)

---

[1] Because Plaintiff delivered his amended complaint for filing within twenty-one days of Officer Martin filing her answer, (see doc. nos. 18, 22), under Fed. R. Civ. P. 15(a), Plaintiff may file an amended complaint once as a matter of course.

Deputy Warden of Care and Treatment Shelton; (4) Unit Manager McDowell; (5) Shift Supervisor for September 20, 2017, 7:30 a.m.; (6) Doctor Taylor; and (7) Safety Inspector John/Jane Doe. (Doc. no. 22, pp. 7.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On September 20, 2017, Plaintiff was transported by van from ASMP to Augusta University Medical Center. (Id. at 1.) Plaintiff is dependent upon a wheelchair. (Id.) Officer Martin failed to acquire safety straps to lock the wheelchair in place during transit. (Id. at 2.) Plaintiff requires extra care because he is sixty-five years old, frail, and requires a neck and back brace. (Id.) Plaintiff had an accident in 1979, which caused severe whiplash and, eventually, deterioration of the disk between vertebrae C-6 and C-7 to the point where Plaintiff is at risk of becoming paralyzed from the neck down. (Id. at 3.) Plaintiff received an anterior plate and four screws in 2010 to prevent paralysis. (Id.) Officer Martin "sped out" of the ASMP parking lot, causing Plaintiff's wheelchair to turn over and Plaintiff to slam his head against the van's window. (Id. at 2.) The weight of the wheelchair and Plaintiff's body caused a dangerous bend in Plaintiff's neck, which was already injured. (Id.) Officer Martin slammed on the brakes after Plaintiff screamed. (Id.) The van remained in the road for approximately three minutes while Officer Sullivan turned Plaintiff and his wheelchair upright and inspected Plaintiff. (Id.) Officer Sullivan told Officer Martin to pull over to the side of the road, where they waited for approximately eight minutes while Officer Sullivan notified the shift supervisor about the incident by radio. (Id.) The shift supervisor failed to order an officer to be dispatched to the van with safety straps before transportation continued. (Id. at 4.) After the van returned to the road, Officer Martin turned too quickly, causing Plaintiff's wheelchair to flip backward. (Id. at 2-3.)

Plaintiff hit his head on the window again, causing a dangerous bend in his neck and his chin into the upper part of his breastbone.  (Id. at 3.)

Officer Sullivan told Officer Martin to slow down and held on to Plaintiff's wheelchair to "ensure Ofc. Martin didn't injure [Plaintiff] any further."  (Id.)  Upon returning to ASMP, PA Simms noted there was unusual stiffness in Plaintiff's neck, prescribed a muscle relaxer, and requested an x-ray, which Dr. Taylor refused despite knowing about Plaintiff's medical history and the recent incident.  (Id.)  Four months later, Dr. Macomson performed an x-ray of Plaintiff and told him surgery could no longer fix his neck because of bone spurs developed from the accident.  (Id.)  Officer Martin, the shift supervisor, and Dr. Taylor have "crushed any and all hopes [Plaintiff] had [for] living a normal functional life," and effectively prevented him from being able to protect himself in prison.  (Id. at 3-4.)  Plaintiff is permanently confined to a wheelchair, except he can walk approximately fifty feet with a cane.  (Id. at 4.)

The van did not meet the safety standards required by state and federal laws and regulations because it appeared to be "aftermarket [and] possibly modified by Georgia Department of Corrections with a makeshift safety apparatus."  (Id. at 5.)  Plaintiff rode in the van twice without being strapped down, and there was no other means of locking the wheelchair in place.  (Id.)  Plaintiff submitted a grievance, and Warden Philbin responded the van had been fixed and the grievance resolved, which implies the van had not been in compliance with safety guidelines and regulations.  (Id.)  Because there are safety inspections, Deputy Warden Shelton knew the van was hazardous but continued to allow it to be used.  (Id.)  The safety inspector should have discovered the van was not compliant, decommissioned the vehicle, and notified the proper authorities.  (Id.)  The safety inspector should have known someone would be seriously, permanently or fatally injured by their failure to do their duty.  (Id. at 5-6.)

On August 27, 2018, "D. Huff" signed the service of process form for Officer Martin, which means Warden Philbin would have known about the case. (Id. at 6.) Thirteen days later, Unit Manager McDowell told Plaintiff to mail his legal mail home and confiscated his legal mail after Plaintiff informed her he has nobody at home. (Id.) Warden Philbin ordered Unit Manager McDowell to confiscate his legal mail in retaliation for the present lawsuit, and they were in a conspiracy to do so. (Id.) For relief, Plaintiff seeks an undisclosed amount of compensatory and punitive damages and any additional relief the Court deems fair and just. (Id. at 7.)

**B.    DISCUSSION**

    **1.    Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative

4

level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## 2. Plaintiff Fails to State a Valid Claim against Deputy Warden Shelton

Plaintiff's amended complaint fails to state a claim against Deputy Warden Shelton because Plaintiff is attempting to hold her liable merely in light of her supervisory position. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013).  Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing

5

Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining employer providing medical care for state inmates cannot be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).  Therefore, to hold Deputy Warden Shelton liable, Plaintiff must demonstrate that either (1) she actually participated in the alleged constitutional violation, or (2) there is a causal connection between her actions and the alleged constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Because Plaintiff names Deputy Shelton as a defendant based on her position as a supervisor and not because of any direct involvement by her in Plaintiff's injury, Plaintiff must allege a causal connection between her and the asserted constitutional violations.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis

added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection. Plaintiff alleges, in conclusory fashion, Deputy Warden Shelton knew the van did not meet safety standards because of her position, a grievance approved later by Warden Philbin, and unspecified safety inspections.  (Doc. no. 22, pp. 4-5.)  However, Plaintiff does not describe the alleged grievance or inspections and has failed to establish Deputy Warden Shelton was on notice of the alleged problem.  Furthermore, a single incident is insufficient to show a history of widespread abuse.  Brown, 906 F.2d at 671.  Additionally, Plaintiff does not allege Deputy Warden Shelton was responsible for a policy or custom resulting in a violation of Plaintiff's rights.  Instead, he merely states Deputy Warden Shelton was deliberately indifferent by failing to respond to an allegedly known danger.  Even assuming Deputy Warden Shelton knew the van did not comply with safety standards, Plaintiff's allegations suggest mere negligence by Deputy Warden Shelton in failing to address the noncompliance, which is insufficient to state a § 1983 claim.

Finally, Plaintiff does not allege any facts to show Deputy Warden Shelton either directed subordinates to act unlawfully or knew they would do so and failed to act in an appropriate manner.  Indeed, Plaintiff does not allege either any similar incidents occurred prior to his injuries or Deputy Warden Shelton was aware of the incident during or after it occurred.  Without more, Plaintiff's allegations are insufficient to show Deputy Warden

Shelton directed subordinates to act unlawfully or was on notice subordinates were acting unlawfully and failed to prevent the alleged violation.

In sum, Plaintiff has not shown Deputy Warden Shelton actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation.  Therefore, Plaintiff fails to state a claim upon which relief can be granted against Deputy Warden Shelton, and she should be dismissed from the case.

### 3. Plaintiff Fails to State a Claim for Deliberate Indifference to a Serious Medical Need Against Dr. Taylor

Plaintiff fails to state a claim against Dr. Taylor for deliberate indifference to a serious medical need regarding his decision Plaintiff did not need an x-ray immediately after the accident.  To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege:  (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)).  To satisfy the subjective component, Plaintiff must allege that a defendant (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted more than mere negligence.  Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

Moreover, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010). Furthermore, the Court should not second-guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

Plaintiff alleges Dr. Taylor refused Plaintiff an x-ray after the van accident and, as a result, Plaintiff developed bone spurs in his neck that prevented him from receiving surgery four months later. (Doc. no. 22, pp. 3-4.) However, the only symptom Plaintiff exhibited after the incident was stiffness in his neck, which does not constitute an obvious or serious medical need. Even assuming Plaintiff had a serious medical need at the time Dr. Taylor denied the request for an x-ray, Plaintiff alleges, at most, a mere difference of opinion as to the proper course of treatment. Although Plaintiff alleges a PA determined an x-ray was necessary following his injuries, Dr. Taylor, who Plaintiff acknowledges was aware of his past medical condition and recent injuries, determined an x-ray was not necessary. (Id. at 3.) Accordingly, Plaintiff fails to state a claim of deliberate indifference to his serious medical needs against Dr. Taylor, and he should be dismissed from this case.

### 4.     Plaintiff Fails to State A Claim Against the Shift Supervisor

Plaintiff has failed to state a viable Eighth Amendment claim against the shift supervisor for deliberate indifference to a substantial risk of serious harm. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). To establish such a claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

Because "a risk of harm to some degree always exists by the nature of its being a [prison]," not every condition rises to the level of an Eighth Amendment violation. Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005). However, "prison officials have a duty to protect prisoners from each other," Murphy v. Turpin, 159 F. App'x 945, 947 (11th Cir. 2005) (citing Brennan, 511 U.S. at 828-29), and "confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting Purcell, 400 F.3d at 1320).

Under the subjective component, "[a] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Lane, 835 F.3d at 1308. However, "[i]nferences from circumstantial evidence . . . can be used to show that a prison official possessed the necessary knowledge." Id. Under the objective component, an official responds to a known risk in an objectively unreasonable manner if "he knew of ways to reduce the harm but knowingly declined to act" or if "he knew of ways to reduce the harm but recklessly declined to act." Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995). Furthermore, Eighth Amendment liability cannot be

11

based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk.  Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

Plaintiff argues the shift supervisor should have ordered an officer to be dispatched to the van with safety straps to secure Plaintiff's wheelchair, which would have prevented the second injury.  (Doc. no. 22, p. 4.)  However, there is no indication the shift supervisor was aware of the straps being absent from the van or any other material facts to gauge the risk and determine the appropriate action.  Plaintiff does not allege any past incidents where any wheelchair-bound prisoner had been injured during transport in a van due to lack of restraints while Officer Martin or any other officer was driving.  Indeed, Plaintiff alleges he was transported without wheelchair restraints in the van on a previous occasion without injury.  (Id. at 5.)  At most, Plaintiff alleges mere negligence, which is insufficient to state a § 1983 claim.  Accordingly, Plaintiff fails to establish a deliberate indifference claim against the shift supervisor, who should be dismissed.

### 5. Plaintiff Fails to State A Claim Against the Safety Inspector

To state a claim under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678.  Plaintiff has not met this standard as to his claim a safety inspector was deliberately indifferent to his safety.

Plaintiff has alleged no specific facts as to location, identity, or time period.  (Doc. no. 22, pp. 5-6.)  He merely claims an unnamed and unidentified safety inspector should have

discovered the van did not meet safety requirements, decommissioned the vehicle until brought into compliance, and written a report to the Deputy Warden of Care and Treatment. (Id.) Plaintiff argues the safety inspector knew or should have known injury was likely to occur and was indifferent to the safety of those being transported in the van. (Id.) Plaintiff's claim is based on complete speculation, as he states no particular facts supporting any of his allegations to suggest any inspection actually did occur or the scope of such an inspection. Iqbal, 556 U.S. at 678. Nor does he allege deliberate indifference. At most, he alleges negligence. Accordingly, Plaintiff fails to state a claim against the safety inspector.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claims against Deputy Warden Shelton, the shift supervisor, Dr. Taylor, and the safety inspector be **DISMISSED** for failure to state a claim and these Defendants be **DISMISSED** from this case. In a companion Order, the Court allows to proceed Plaintiff's deliberate indifference claim against Officer Martin and First Amendment retaliation claims against Warden Philbin and Unit Manager McDowell.

SO REPORTED and RECOMMENDED this 18th day of December, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA