IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

DANIEL C. CALLAHAN, SR.,              )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )        CV 118-108
                                      )
OFFICER YOLANDA MARTIN; WARDEN )
PHILBIN; and BETTY MCDOWELL, Unit )
Manager,                              )
                                      )
          Defendants.                 )
_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case brought pursuant to 42 U.S.C. § 1983 regarding, events alleged to have occurred at Augusta State Medical Prison in Grovetown, Georgia.  Before the Court is Defendants' motion for summary judgment.  (Doc. no. 46.)  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion for summary judgment be **GRANTED**, a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

I.    **PROCEDURAL BACKGROUND**

Plaintiff brought an Eighth Amendment claim against Officer Martin and a First Amendment retaliation claim against Warden Philbin and Unit Manager McDowell.  Because Plaintiff is proceeding IFP, the Court screened Plaintiff's complaint in compliance with the IFP statute, 28 U.S.C. §§ 1915(e) and 1915A.  (Doc. no. 9.)  The Court allowed Plaintiff to proceed with a claim for deliberate indifference to safety against Officer Martin,

for not having any safety straps and rails to secure Plaintiff's wheelchair during transit. (See doc. nos. 1, 8.)  On October 19, 2018, Officer Martin answered Plaintiff's complaint.  (Doc. no. 18.)  On November 13, 2018, Plaintiff filed an Amended Complaint as of right.  (Doc. no. 22.)

On December 18, 2018, the Court screened Plaintiff's amended complaint.  (Doc. no. 27.)  The Court allowed Plaintiff to proceed with a First Amendment retaliation claim against Warden Philbin and Unit Manager McDowell based on Plaintiff's allegation they confiscated Plaintiff's legal mail in retaliation for the present lawsuit.  (Id.)  On February 6, 2019, the Court dismissed all claims against Deputy Warden Shelton, the shift supervisor, Dr. Taylor, and the safety inspector for failure to state a claim, thereby leaving for adjudication only the deliberate indifference claim against Officer Martin and the retaliation claims against Warden Philbin and Unit Manager McDowell.  (Doc. no. 40.)

Defendants filed the present motion for summary judgment on July 31, 2019.  (Doc. no. 46.)  Officer Martin argues she is entitled to summary judgment because Plaintiff has failed to show she exhibited deliberate indifference to his safety.  (Doc. no. 47, p. 8.)  Warden Philbin and Unit Manager McDowell argue they are entitled to summary judgment because Plaintiff has not shown any causal connection between the filing of this action or any grievance and the temporary confiscation of his legal papers.  (Id. at 15-16.)  Warden Philbin further contends he is entitled to summary judgment because he may not be held liable solely on the basis of *respondeat superior* or vicarious liability.  (Id. at 16-17.)  Lastly, all Defendants contend they are entitled to summary judgment because they are entitled to qualified immunity.  (Id. at 17-19.)  As to Plaintiff's requested relief, Defendants argue the

2

Prison Litigation Reform Act (PRLA) bars any claim for compensatory and punitive damages.  (Id. at 20-21.)  On August 22, 2019 Plaintiff filed his response to Defendants motion for summary judgment, arguing summary judgment is not proper because Officer Martin and Officer Sullivan were unaware safety straps were available to secure Plaintiff's wheelchair.  (Doc. no. 51.)  In support, Plaintiff attached the following exhibits: (1) Lt. Latasha Harris's unsworn witness statement; and (2) Plaintiff's Georgia Department of Corrections profile.  (Id.)

## II.   FACTS

Because Plaintiff did not contradict Defendants' factual assertions with any affidavits or other admissible documentary evidence, the Court deems admitted all portions of Defendants' Statement of Material Facts that have evidentiary support in the record and are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[1] See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F.Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000).

The Court has considered at summary judgment the allegations made with specificity in Plaintiff's amended complaint and deposition because Plaintiff attested them to be true under penalty of perjury.  See 28 U.S.C. § 1746; Federal Rule of Civil Procedure 56(e);

---

[1]Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

3

United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1444 (11th Cir. 1991); see also Howard v. Memnon, 572 F. App'x 692, 694 (11th Cir. 2014) ("A *pro se* plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence").   Nonetheless, "[u]nsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment." Howard, 572 F. App'x at 695 (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)).   Thus, the Court will review the record, including Plaintiff's sworn deposition, "to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

### A.   Undisputed Facts

Plaintiff requires extra care because he is sixty-five years old, frail, and requires a neck and back brace.  (Doc. no. 22, p. 2.)  In 1980, Plaintiff was involved in an automobile accident which caused severe whiplash and gradual deterioration of the disk between vertebrae C-6 and C-7 to the point where Plaintiff is at risk of becoming paralyzed from the neck down.  (Id. at 3.)  In 2010, Plaintiff underwent surgery to install four screws in the front of his neck between C6 and C7, an anterior plate, and a Stryker peek cage to prevent paralysis.  (Doc. no. 22, p. 3; Pl.'s Dep., doc. no. 47-1, pp. 14-15.)  Plaintiff wears a semi-hard collar neck brace which allows him to move his head.  (Pl.'s Dep., p. 15.)  Plaintiff was not wearing a neck brace on September 20, 2017.  (Id.)  Plaintiff's original neck injury in 1980 primarily contributed to his current condition.  (Id. at 11.)

###### 1.  September 20, 2017 Events

On September 20, 2017, Officers Martin and Sullivan transported Plaintiff by van from ASMP to Augusta University Medical Center for a medical appointment to assess whether Plaintiff was a candidate for surgery.  (Id. at 31-32.)  The van was equipped with a wheelchair lift but there were no straps in the van to secure Plaintiff's chair.  (Doc. no. 22, p. 2.)  Officer Sullivan placed Plaintiff in the inmate cage, locked the wheels to Plaintiff's wheelchair, placed Plaintiff in the middle of the van, and faced Plaintiff toward the front. (Pl.'s Dep., p. 35.)  Officer Martin, the driver, turned left onto Gordon Highway directly in front of the prison after getting gas at ASMP's pumps.  (Id. at 37.)  During the turn, Plaintiff's wheelchair tilted toward the right side of the van.  (Id. at 38.)

Officer Martin stopped the van, and Officer Sullivan faced Plaintiff's wheelchair toward the side of the van to secure Plaintiff.  (Id. at 38, 41.)  Plaintiff did not state he wanted to return to the prison and Officer Martin proceeded to Plaintiff's medical appointment.  (Id. at 43.)  After continuing a short distance, Plaintiff's wheelchair flipped backwards when Officer Martin made a right turn.  (Id. at 44.) Officer Martin stopped the van, and Officer Sullivan moved closer to Plaintiff for the remainder of the trip inside the inmate cage.  (Pl.'s Dep., p. 50.)  Once Plaintiff returned to ASMP, a physician's assistant examined Plaintiff, gave him Tylenol 3, Benadryl, and a muscle relaxer, and instructed him to apply an ice pack to his neck when he returned to his dorm.  (Id. at 88-90.)  Plaintiff received no further treatment.  (Id. at 91.)

### 2.      September 13, 2018 Events

On September 13, 2018, Unit Manager McDowell performed an inspection of the dormitory in which Plaintiff was housed.  (<u>Id.</u> at 75.)  Plaintiff's net bag, containing his legal papers and previously filed grievances, were allegedly confiscated from the back of his bunk in his cell.  (<u>Id.</u>)  Plaintiff does not allege his belongings were confiscated in connection with the filing of this lawsuit.  (<u>Id.</u> at 74.)   Instead, Plaintiff alleges his belongings were confiscated in retaliation for a grievance he filed on September 12, 2018, concerning intercom announcements of pill calls not being loud enough for him to hear.  (<u>Id.</u> at 68-73.)  Warden Philbin was not personally involved in the alleged confiscation of Plaintiff's net bag.  (<u>Id.</u> at 98.)

### B.      Disputed Facts

### 1.      Plaintiff's Deposition and Amended Complaint

On September 20, 2017, Officer Martin "sped out" of the ASMP parking lot, causing Plaintiff's wheelchair to turn over and Plaintiff to slam his head against the van's window.  (Doc. no. 22, p 2.)  The weight of the wheelchair and Plaintiff's body caused a dangerous bend in Plaintiff's neck, which was already injured.  (<u>Id.</u>)  Officer Martin slammed on the brakes after Plaintiff screamed.  (<u>Id.</u>)  The van remained in the road for approximately three minutes while Officer Sullivan turned Plaintiff and his wheelchair upright and inspected Plaintiff.  (<u>Id.</u>)  Officer Sullivan told Officer Martin to pull over to the side of the road, where they waited for approximately eight minutes while Officer Sullivan notified the shift supervisor about the incident by radio.  (<u>Id.</u>)  The shift supervisor failed to order an officer to be dispatched to the van with safety straps before transportation continued.  (<u>Id.</u> at 4.)

6

Instead, the shift supervisor ordered Officers Martin and Sullivan to continue transporting Plaintiff to the hospital.  (Pl.'s Dep., p. 42.)  Officer Martin "cut a hard left . . . and punched it to get onto the highway," causing Plaintiff's wheelchair to flip backward.  (Pl.'s Dep., p. 38; doc. no. 22, pp. 2-3.)  Plaintiff hit his head on the window again, causing a dangerous bend in his neck and forcing his chin into the upper part of his breastbone.  (Doc. no. 22, p. 3.)  Officer Sullivan repositioned Plaintiff and Officer Martin asked Plaintiff why he did not lock his wheels. (Pl.'s Dep., p. 38.)  Officer Sullivan responded and explained he locked Plaintiff's wheels.  (Id.)

Officer Sullivan told Officer Martin to slow down and held on to Plaintiff's wheelchair to "insure Ofc. Martin didn't injure [Plaintiff] any further."  (Doc. no. 22, p. 3.) Officer Sullivan radioed a supervisor and was instructed to bring Plaintiff to the prison's emergency response room upon their return.  (Pl.'s Dep., p. 42.)  Once Plaintiff arrived at his medical appointment, Officer Martin told Plaintiff he should have locked his wheels to prevent the wheelchair from flipping over.  (Id. at 47.)  Officer Martin has "crushed any and all hopes [Plaintiff] had [for] living a normal functional life," and effectively prevented him from being able to protect himself in prison.  (Doc. no. 22, pp. 3-4.)  Plaintiff contends Officer Martin was driving fast "because she had a lunch date."  (Pl.'s Dep., p. 50.)  Plaintiff does not believe Officer Martin intentionally harmed him; however, "her negligence caused the harm."  (Id. at 63.)  Plaintiff further believes Officer Martin signed out the van and as such would have been responsible for ensuring the van was equipped with safety straps.  (Id. at 59.)  This belief is based on speculation.  (Id. at 61-63.)

Plaintiff is permanently confined to a wheelchair, except he can walk approximately fifty feet with a cane. (Doc. no. 22, p. 4.) Plaintiff believes the van did not meet the safety standards required by state and federal laws and regulations because it appeared to be "aftermarket [and] possibly modified by Georgia Department of Corrections with a makeshift safety apparatus." (Id. at 5.) Plaintiff rode in the van twice without being strapped down, and there was no other means of locking the wheelchair in place. (Id.) Plaintiff submitted a grievance, and Warden Philbin responded the van had been fixed and the grievance resolved. (Id.)

On August 27, 2018, "D. Huff" signed the service of process form for Officer Martin. (Id. at 6.) Thirteen days later, Unit Manager McDowell told Plaintiff to mail his legal mail home and confiscated Plaintiff's legal mail after Plaintiff informed her he has no one at home. (Id.) Plaintiff's belongings were returned to him at the end of the day except his legal research and filed grievance pertaining to this case. (Pl.'s Dep., pp. 79-80.) The confiscation of Plaintiff's research did not negatively impact the progression of this case because Plaintiff redid the research. (Id. at 83.) Warden Philbin was not personally involved in the confiscation of Plaintiff's legal mail, however, Unit Manager McDowell stated "Warden is behind me 100 percent in everything I do" before confiscating Plaintiff's property. (Id. at 76, 98.)

### 2.   Officer Martin's Affidavit

On September 20, 2017, Officer Martin, along with Officer Sullivan, drove Plaintiff to an outside medical appointment. (Martin Aff., doc. no. 47-2, ¶ 7.) As Officer Martin exited ASMP and turned left on Gordon highway, she saw Plaintiff's wheelchair through the

8

interior rearview mirror tilt about an inch off the floor.  (Id. ¶ 8.)  She immediately pulled over and stopped the van.  (Id.)  Plaintiff repeatedly stated he was fine and that he wished to continue to Augusta University for his medical appointment.  (Id. ¶ 9.)  Officer Martin turned left onto a dirt road near the front of the prison and stopped the van.  (Id. ¶ 10.)  Another officer stopped to ask about the situation and called a supervisor.  (Id.)  The supervisor instructed Officer Martin to continue to Plaintiff's medical appointment if Plaintiff was not injured.  (Id.)  Plaintiff reiterated he was fine and wanted to proceed to his medical appointment.  (Id.)  Officer Martin proceeded for a short distance and heard Plaintiff say his wheelchair was flipping backwards.  (Id.)  Officer Martin stopped the van and Officer Sullivan sat next to Plaintiff for the remainder of the ride.  (Id.)

Officer Martin had not experienced a wheelchair tilt during transport before Plaintiff's wheelchair incident.  (Id. ¶ 11.)  As of September 20, 2017, Officer Martin had not previously used straps to secure an inmate's wheelchair during transport and did not know safety straps were available for securing a wheelchair in a transport van.  (Id. ¶ 12.)  Officer Martin spoke with a supervising lieutenant about this incident once she returned to ASMP.  (Id.)  It was during this conversation Officer Martin learned for the first time safety straps are available.  (Id.)

### 3.   Unit Manager McDowell's Affidavit

On September 10, 2018, Unit Manager McDowell was assigned to work as Unit Manager in area 14, also referred to as "general population" and "open bay."  (McDowell Aff., doc. no. 47-4, ¶ 5.)  Plaintiff submitted grievance #274363 concerning the confiscation of his property and other issues the day it occurred.  (Id. ¶ 7.)  On the day of the inspection,

9

Unit Manager McDowell was unfamiliar with Plaintiff and unaware Plaintiff filed a previous grievance or this action concerning his wheelchair incident.  (Id. ¶ 9.)  As Unit Manager, McDowell does not handle inmate property and did not confiscate any of Plaintiff's property or direct anyone to do so.  (Id. ¶ 10.)  Unit Manager McDowell has not communicated with Warden Philbin about Plaintiff's grievances or this action.  (Id. ¶ 11.)

### 4.    Warden Philbin's Affidavit

Warden Philbin was not present and did not participate in the dorm inspection and alleged confiscation of Plaintiff's legal papers and grievance.  (Philbin Aff., doc. no. 47-5, ¶ 5.)  Warden Philbin did not direct Unit Manager McDowell to allegedly confiscate Plaintiff's net bag, legal papers, or grievance during the September 13, 2018 inspection.  (Id. ¶ 6.)  On the day of the inspection, Warden Philbin was unaware Plaintiff filed this action.  (Id. ¶ 7.)  On September 13, 2018, Warden Philbin reviewed grievance #274363 which addressed the dorm inspection and alleged confiscation of Plaintiff's legal materials.  (Id. ¶ 8.)  Warden Philbin rejected the grievance because it addressed more than one issue/incident in violation of the Georgia Department of Corrections policy which requires a single issue/incident to be contained within a grievance.  (Id.)  Except for grievance #274363, Warden Philbin has not received any written communication from Plaintiff or others concerning the subject matter of this action.  (Id. ¶ 9.)  On September 22, 2017, Plaintiff filed grievance #252012, which concerns Plaintiff's wheelchair incident.  (Id. ¶ 10.)  The grievance was filed prior to Warden Philbin's assignment to serve as Warden of ASMP.  (Id.)  Warden Philbin's predecessor responded to grievance #252012.  (Id.)

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by

11

affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B.   Officer Martin is Entitled to Summary Judgment Because Plaintiff Cannot Show Deliberate Indifference and Officer Martin is Entitled to Qualified Immunity

Officer Martin argues she is entitled to summary judgment because Plaintiff has suggested mere negligence as the basis for her liability, and Plaintiff has failed to show Officer Martin exhibited deliberate indifference to his safety. (Doc. no. 47, pp. 8-15.) In opposition, Plaintiff argues summary judgment is not appropriate because Officer Martin was unaware safety straps were available to secure Plaintiff's wheelchair. (Doc. no. 51, p. 1.)

### 1.   Deliberate Indifference Standard

A prisoner seeking to impose liability for an Eighth Amendment claim must establish the existence of "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).

As the Eleventh Circuit explained,

When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and

12

one objective.  To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm.  To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).  The deliberate indifference prong of the test requires proof of "(1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence."  Dang *ex rel.* Dang v. Sheriff, Seminole Cty., Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) (citation omitted).  The prisoner must show the challenged prison condition is "extreme" and "pose[s] an unreasonable risk of serious damage to [the prisoner's] future health or safety."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotations omitted).  In addition, "[a] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Lane, 835 F.3d at 1308 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

### 2. No Reasonable Juror Could Find Officer Martin Was Deliberately Indifferent to Plaintiff's Safety

Plaintiff's allegation Officer Martin exhibited deliberate indifference to his safety because she was unaware of the need or requirement for safety straps when transporting wheelchair-bound inmates is insufficient to establish an Eighth Amendment violation.  As to the subjective component, there is no evidence Officer Martin had specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff due to the lack

of safety straps when transporting wheelchair-bound inmates, that Officer Martin actually drew this inference, or that she did not respond reasonably to this risk. <u>Lane</u>, 835 F.3d at 1308. Plaintiff does not dispute Officer Martin's statement she was unaware safety straps were available at the time of the incident. (Doc. no. 51, p. 1.) Indeed, there is no evidence to suggest Officer Martin was subjectively aware the lack of safety straps on Plaintiff's wheelchair posed an unreasonable risk of serious damage to Plaintiff's safety. Officers Sullivan and Martin testified by affidavit they had never before utilized straps when transporting inmates in wheelchairs and learned for the first time of their existence after this incident. (Doc. no. 47-3, Sullivan Aff., ¶ 14; Martin Aff., ¶ 12.) Both officers also testified this incident was the first time either had witnessed a wheelchair tilt during transport. (Sullivan Aff., ¶ 12; Martin Aff., ¶ 11.) As a result of this incident, officers were instructed of the procedures for transporting offenders in wheelchairs after Plaintiff's grievance was filed. (Martin Aff., ¶ 12.) Thus, no reasonable juror could find Officer Martin was subjectively aware of a serious risk of harm to Plaintiff.

Moreover, as to the objective component of Plaintiff's claim, Plaintiff fails to show the lack of safety straps on his wheelchair during transport posed a substantial risk of serious harm. The Eleventh Circuit has found the absence of seatbelts or other safety restraints when transporting inmates does not constitute a substantial risk of serious harm. <u>Smith v. Sec'y For Dep't of Corr.</u>, 252 F. App'x 301, 304 (11th Cir. 2007.) In <u>Smith</u>, the Eleventh Circuit relied on <u>Spencer v. Knapheide Truck Equip. Co.</u>, 183 F.3d 902, 904 (8th Cir. 1999), where the plaintiff was forced to ride on a steel bench in the back of a van without any safety restraints. The plaintiff was thrown from the seat during transport and paralyzed due to the

fall. <u>Spencer</u>, 183 F.3d at 904. The Eighth Circuit held the purchase of vans without safety restraints and the use of those vans did not pose a substantial risk of serious harm to the prisoner passengers. <u>Id.</u> at 906. The Eleventh Circuit relied on <u>Spencer</u> as persuasive authority and determined that riding in a van on a steel bench with a seat belt was insufficient to satisfy the requisite objective component under the Eighth Amendment. <u>Smith</u>, 252 F. App'x at 304. In so holding, the Eleventh Circuit explained "we cannot say that riding in a van equipped with the manufacturer's car seats, seat belts, and windows is a necessity, such that riding in a van without these characteristics is a deprivation of the minimal measure of life's necessities or is something that modern society would find intolerable." <u>Id.</u>; <u>see also</u> <u>Alexander v. Loar</u>, No. 16-14422, 2017 WL 4324817, at *11 (S.D. Fla. June 7, 2017) (stating "under <u>Smith</u>, the failure to secure a detainee during transport does not pose an unreasonable risk of serious damage").

Finally, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires a conscious disregard of a serious and imminent risk. <u>Farmer</u>, 511 U.S. at 835-39; <u>see also</u> <u>Adams v. Poag</u>, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring plaintiff to show "more than mere negligence," and stating courts are to look for "obduracy and wantonness, not inadvertence or error in good faith"). There is no evidence Officer Martin followed a course of action which constituted more than mere negligence. Indeed, Officer Martin stopped the van immediately when the first tilting incident occurred, and Officer Sullivan not only switched Plaintiff's wheelchair to face a different direction, but also radioed the supervisor for instructions, who ordered Officer Martin to proceed with the trip. (Sullivan Aff., ¶¶ 7-8.) When the wheelchair tilted the second time, Officer Martin

stopped the van again and Officer Sullivan entered the inmate cage and sat beside Plaintiff for the rest of the ride so he could hold onto the wheelchair.  (Id. ¶ 10.)

For these reasons, even when the facts are viewed favorably to Plaintiff, a reasonable juror could not find deliberate indifference and at most, could find negligence.  In fact, Plaintiff does not believe Officer Martin intentionally harmed him, instead, he believes "her negligence caused the harm."  (Pl.'s Dep., p. 63); see Estelle v. Gamble, 429 U.S. 97, 106 (1976) (stating mere negligence does not violate Eighth Amendment); Kelley v. Hicks, 400 F.3d 1282, 1285 (11th Cir. 2005) (noting negligence is insufficient to establish constitutional violation).  Therefore, because no reasonable juror could find the objective and subjective components necessary to establish an Eighth Amendment violation, Officer Martin is entitled to summary judgment.

**C.     The Undisputed Facts, and Disputed Facts Viewed in Plaintiff's Favor, Establish Officer Martin is Entitled to Qualified Immunity**

"The doctrine of qualified immunity protects government officials, acting pursuant to their discretionary authority, 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010).  For an official's acts to be within his or her discretionary authority, they must be "(1) undertaken pursuant to the performance of [his or her] duties and (2) within the scope of [his or her] authority."  Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (punctuation omitted) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir.

16

1995)).  Here, it is undisputed Officer Martin was acting under color of state law and within her discretionary authority when she transported Plaintiff to his medical appointment.  The burden now shifts to Plaintiff to show: (1) Officer Martin violated his constitutional right, and (2) this right was clearly established at the time of the alleged violation.  Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

"A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable."  Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted).  "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity."  Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003).  The determination of "whether a constitutional right was clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  Vinyard v. Wilson, 311 F.3d 1340, 1349-50 (11th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Factually similar cases from the relevant jurisdictions may be material to this determination, though prior cases need not demonstrate the unlawfulness of the challenged conduct in the exact same factual circumstance for qualified immunity to be overcome.  See Hope v. Pelzer, 536 U.S. 730, 739 (2002).  Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the United States Supreme Court, Eleventh Circuit Court of Appeals, or the highest court

of the state where the case arose." Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Even if Plaintiff could prove Officer Martin violated his Eighth Amendment right by failing to secure his wheelchair during transit, this right was not clearly established at the time of the alleged violation.  Plaintiff has not provided, and the Court is unaware of, any decisions of the United States Supreme Court, Eleventh Circuit Court of Appeals, or Georgia Supreme Court suggesting the lack of safety straps when transporting wheelchair-bound inmates is an Eighth Amendment violation.  Therefore, Officer Martin is entitled to qualified immunity.

### D.     Unit Manager McDowell and Warden Philbin are Entitled to Summary Judgment on Plaintiff's First Amendment Retaliation Claim

Unit Manager McDowell and Warden Philbin argue they are entitled to summary judgment because, regardless of whether Plaintiff engaged in protected speech, Plaintiff has not shown any causal connection between the filing of this action or any grievance and the temporary confiscation of his legal papers.  (Doc. no. 47, pp. 15-16.)  Nor can Plaintiff prove harm.  Warden Philbin further contends he is entitled to summary judgment because he may not be held liable solely on the basis of *respondeat superior* or vicarious liability.

### 1.     First Amendment Retaliation Standard

Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances.  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).  To prevail on a retaliation claim, Plaintiff must establish that: (1) his speech was constitutionally protected; (2) he suffered adverse action that would likely deter a person of

ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the adverse action and the protected speech.  O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).

The causation prong "asks whether the defendants were subjectively motivated" by the plaintiff's protected speech.  Moulds v. Bullard, 345 F. App'x 387, 393 (11th Cir. 2009) (citing Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)).   Under the subjective motivation prong:

> [O]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on his motion for judgment as a matter of law or prior to trial on summary judgment.

Smith, 532 F.3d at 1278 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).   "[T]he question for the court under Mt. Healthy [becomes] whether a reasonable fact finder, a jury, would have to find that the defendants would have [taken the adverse action against plaintiff] 'even in the absence of the protected conduct.'"  Id. at 1279.

### 2. Unit Manager McDowell is Entitled to Summary Judgment Because Plaintiff Fails to Show a Causal Connection Between the Alleged Confiscation and His Filed Grievance

In his amended complaint, Plaintiff alleges Unit Manager McDowell confiscated Plaintiff's legal mail at the direction of Warden Philbin in retaliation for Plaintiff filing the present lawsuit and that Unit Manager McDowell and Warden Philbin conspired to do so. (Doc. no. 22, p. 6.)  Taking the facts in the light most favorable to Plaintiff, Plaintiff fails to show Unit Manager McDowell was subjectively motivated to discipline Plaintiff for exercising his First Amendment rights.

19

Plaintiff concedes he has no personal knowledge or evidence Warden Philbin and Unit Manager McDowell communicated about Plaintiff's current action.  (Pl.'s Dep., p. 67.)  Further, there is no evidence in the record Unit Manager McDowell was aware of the present action prior to the alleged confiscation.  Indeed, in his deposition Plaintiff admits he is not alleging Unit Manager McDowell retaliated against him for the wheelchair incident and his related claim.  (Id. at 73-74.)  Instead, Plaintiff alleges his property was taken because of a grievance he filed complaining he missed multiple pill calls because the volume on the prison intercom was too low.  (Id.)

However, Plaintiff produces no evidence, other than his conclusory allegation his materials were confiscated because of his previously filed grievance, to indicate Unit Manager McDowell retaliated against him.  (Id. at 73.)  The record is undisputed Unit Manager McDowell was not even aware Plaintiff filed the intercom grievance.  Therefore, Plaintiff fails to establish a causal relationship between his grievance filed on September 12, 2018 and the alleged confiscation of his property the next day.  See Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (affirming summary judgment for defendant because plaintiff "produced nothing beyond his own conclusory allegations suggesting that [defendant's] actions . . . were motivated by retaliatory animus); Smith, 532 F.3d at 1278 (holding plaintiff must show defendant was subjectively motivated by plaintiff's protected speech to prevail on retaliation claim); Gayle v. Daughtry, No. CA120740, 2013 WL 4046467, at *6 (S.D. Ala. Aug. 8, 2013) (granting summary judgment to defendant because plaintiff relied on his conclusory allegations to show retaliation and thus failed to establish a causal relationship).

Accordingly, when drawing all justifiable inferences in Plaintiff's favor, there is no genuine issue or dispute of material fact Unit Manager McDowell was not aware of Plaintiff's previously filed grievance, and therefore, she is entitled to summary judgment.

### 3. Warden Philbin is Entitled to Summary Judgment Because He Cannot be Held Liable Based on His Supervisory Position

Plaintiff bases Warden Philbin's liability on being warden of the prison, arguing Warden Philbin "knew or should have known" Unit Manager McDowell allegedly confiscated his property as an act of retaliation because of his position as warden.  (Pl.'s Dep., pp. 66, 101.)  However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013).  Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).  Therefore, to hold Warden Philbin liable, Plaintiff must demonstrate that either (1) he actually participated in the alleged constitutional violation, or (2) there is a causal connection between his actions and the alleged constitutional violation. See Hartley, 193 F.3d at

1269 (citing <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990)).

While Plaintiff believes Warden Philbin ordered Unit Manager McDowell to confiscate his legal mail in retaliation for filing his September 12, 2018 grievance, he admits this is speculation and does not know whether Warden Philbin ever spoke with Unit Manager McDowell about his grievance or the confiscation. (Pl.'s Dep., p. 67.) Under either circumstance, Plaintiff has failed to present any evidence to support his claim of retaliation against Warden Philbin. Plaintiff concedes Warden Philbin had no personal involvement in the confiscation of Plaintiff's property. (<u>Id.</u> at 67, 98.) However, Plaintiff maintains that because of Warden Philbin's position, he knew or should have known of the confiscation. (<u>Id.</u> at 66, 76, 98.) Thus, Plaintiff fails to state any facts suggesting Warden Philbin actually participated in the alleged constitutional violation.

Therefore, Plaintiff must allege a causal connection between Warden Philbin and the asserted constitutional violation. <u>See</u> <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," <u>Brown</u>, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" <u>Hartley</u>, 193 F.3d at 1269 (quoting <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated

22

occurrences." Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

There are no facts to support the necessary causal connection.  In his deposition, Plaintiff states Unit Manager McDowell said "Warden is behind me 100 percent in everything I do" before confiscating Plaintiff's property.  (Pl.'s Dep., 76, 98.)  However, even in light of this alleged statement, Plaintiff concedes he does not believe and has no reason to suspect Warden Philbin ordered Unit Manager McDowell to confiscate his legal papers and grievance.  (Id. at 101.)  Plaintiff primarily alleges, in conclusory fashion, Warden Philbin "knew or should have known" Unit Manager McDowell confiscated his legal papers and grievance due to his position as warden of the prison.  (Id. at 66, 101.)  In particular, Plaintiff contends Warden Philbin is at the "top of the ladder", and although he has numerous people under his supervision, "the fact remains, in legal speaking, [he] knew or …should have known."  (Id. at 102.)  Warden Philbin denies any knowledge or involvement.  (Philbin Aff., ¶ 5.)

This is a classic argument for *respondeat superior* liability, which is prohibited in the context of § 1983.  There is no evidence of a policy, custom, "history of widespread abuse", or any direction by Warden Philbin for Unit Manager McDowell to act unlawfully.  Id.; Cottone, 326 F.3d at 1360.  A single incident is insufficient to show a history of widespread abuse sufficient to put Warden Philbin on notice.  Brown, 906 F.2d at 671.  Thus, Plaintiff may not hold Warden Philbin liable under § 1983 and he is entitled to summary judgment on

Plaintiff's First Amendment retaliation claim.

> **4.    Unit Manager McDowell and Warden Philbin's Claims Regarding Qualified Immunity and Damages Are Moot**

Unit Manager McDowell and Warden Philbin argue they are entitled to qualified immunity and that even if a constitutional violation is found, Plaintiff is limited to recovery of nominal damages because his injuries are *de minimis*.  (Doc. no. 47, pp. 17-21.)  Because Defendants are entitled to summary judgment on the substantive merits of Plaintiff's retaliation claims as discussed *supra*, the issues of qualified immunity and damages are ultimately moot, and the Court will not address them.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 46), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 6th day of February, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA